Scott FIFIELD, Plaintiff,

v.

SOUTH HILL LIMITED PARTNERSHIP and S.W. Development Corp., Defendants and Third-party Plaintiffs,

v.

DUTCHESS EXTERIORS, INC., Third-party Defendant.

No. 3:96 CV 2576(GLG).

United States District Court, D. Connecticut.

Sept. 16, 1998.

David J. Burke, Ralph W. Johnson, III, Robinson & Cole, Stamford, CT, Andrew J. Genna, Finkelstein, Levine, Gittelsohn & Tetenbaum, Newburgh, NY, for Scott Fifield.

Michael J. O'Sullivan, Kevin M. Bresnahan, Clendaniel, Weddall & Larose, Hartford, CT, for South Hill Ltd. Partnership, SW Dev. Corp.

Kevin R. Murphy, Robert J. Sickinger, Murphy, Laccavole & Karpie, Bridgeport, CT, for Dutchess Exteriors.

## MEMORANDUM DECISION

GOETTEL, District Judge.

Pursuant to Federal Rule of Civil Procedure 56, third-party defendant Dutchess Exteriors, Inc. ("Dutchess") moves for summary judgment on both counts of the third-party complaint. For the reasons discussed below, Dutchess' motion **(Document # 34)** is DENIED on Count One and GRANTED on Count Two.

### BACKGROUND

This case arises from a workplace accident that occurred on August 22, 1995 while plaintiff Scott Fifield was employed by Dutchess. Dutchess was hired as an independent con-

tractor by defendants and third-party plaintiffs South Hill Limited Partnership ("South Hill") and S.W. Development Corporation ("S.W.Development") to provide siding installation, roofing, carpentry, and framing services. The project involved the construction of a condominium complex, known as Southwoods Condominium Association, in Danbury, Connecticut. According to defendants, S.W. Development was the general contractor and South Hill was the owner and developer.

Plaintiff commenced this action on December 19, 1996 to recover damages for the personal injuries he suffered when he fell from scaffolding at the construction site. As of December 1, 1996, plaintiff had received workers' compensation benefits in the amount of $93,305.65. On April 4, 1997, this Court denied defendants' motion to dismiss because we found that plaintiff had stated a cause of action for independent negligence against defendants. Defendants then impleaded Dutchess seeking indemnification. Dutchess now moves for summary judgment because it argues that defendants cannot prevail on theories of either common-law or contractual indemnification.

### DISCUSSION

A court may grant summary judgment only if it determines that there is no genuine issue of material fact based on a review of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Fed.R.Civ.P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). When ruling on a summary judgment motion, a court must construe the facts in a light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If there is no genuine issue of material fact, the moving party is entitled to summary judgment as a matter of law. *Celo-*

*tex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## I. COMMON–LAW INDEMNIFICATION

■ In Count One of the third-party complaint, defendants assert a claim for common-law indemnification. "Ordinarily there is no right of indemnity or contribution between joint tort-feasors." *Kaplan v. Merberg Wrecking Corp.*, 152 Conn. 405, 412, 207 A.2d 732, 736 (1965). An exception exists when a secondarily negligent tortfeasor seeks indemnification from a primarily negligent tortfeasor. Thus, in this case defendants must demonstrate that: (1) Dutchess was negligent; (2) Dutchess' negligence, rather than defendants' negligence, was the direct, immediate cause of the accident and the resulting injuries; (3) Dutchess was in control of the situation to the exclusion of defendants; and (4) defendants did not know of Dutchess' negligence, had no reason to anticipate it, and could reasonably rely on Dutchess not to be negligent. *Id.* at 416, 207 A.2d at 738. Defendants make these allegations in paragraphs six to eight of the third-party complaint.

■ Additionally, in cases where an injured party has received workers' compensation benefits and has sued a party other than his employer, usually that defendant cannot proceed against the plaintiff's employer for indemnification because workers' compensation is the exclusive remedy against an employer. *See* C.G.S.A. § 31–284(a); *Skuzinski v. Bouchard Fuels, Inc.*, 240 Conn. 694, 699, 694 A.2d 788, 791 (1997). To overcome the exclusive remedy bar, defendants must prove the existence of an independent relationship between themselves and Dutchess. *Ferryman v. City of Groton*, 212 Conn. 138, 143–45, 561 A.2d 432, 434–35 (1989). Several courts have held that a contractual agreement may be sufficient to satisfy the independent duty requirement if it gives rise to a special duty flowing from the indemnitee to the indemnitor. *See, e.g., id.* at 144–45, 561 A.2d at 435; *Maccarone v. Hawley*, 7 Conn. App. 19, 23–24, 507 A.2d 506, 508 (1986); *Fiorello v. Universal Builders Supply, Inc.*, Civ. No. 950376404, 1997 WL 781829, at *2–4 (Conn.Super. Dec.8, 1997); *Clark v. City of*

*New London,* Civ. No. 93525446S, 1997 WL 568050, at \*8 (Conn.Super. Aug.29, 1997); *Thibeault v. Mark Indus.,* Civ. No. 504396, 1992 WL 361779, at \*2 (Conn.Super. Nov.30, 1992). In the second count of the third-party complaint, defendants assert that Dutchess contractually agreed to indemnify them and hold them harmless for any liability resulting from Dutchess' action or inaction. Except for this reference, the parties have not addressed the independent duty element in their summary judgment briefs. While defendants bear the burden of proving the existence of an independent relationship, we find that they have submitted sufficient proof to raise a genuine issue of material fact on this issue, as discussed more fully *infra* at 10–11. *See Rahmati v. Mehri,* 188 Conn. 583, 587, 452 A.2d 638, 640 (1982) ("Whether and on what terms a contractual commitment has been undertaken are ultimately questions of fact. . . .").

We consider the common-law indemnification claim against the allegations raised in the complaint. *Cimino v. Yale University,* 638 F.Supp. 952, 958 (D.Conn.1986); *see Kaplan,* 152 Conn. at 413–14, 207 A.2d at 737 (citations omitted). In the relevant portions of the amended complaint, plaintiff asserts that the accident was caused by the negligence, carelessness, breach of duty, and lack of care by the defendants, their agents, servants and/or employees. Am. Compl. ¶ 20. Plaintiff also alleges that South Hill and S.W. Development:

> were negligent, wanton, reckless and careless in allowing, causing and/or permitting dangerous, hazardous and/or unsafe conditions to exist on the aforesaid premises; in failing to provide plaintiff with a safe place to work; in failing to provide such devices and equipment and/or failing to construct, place and operate such devices as to give proper protection to persons employed on the job site, including the plaintiff herein; in failing to provide guard rails on said scaffold; in failing to provide equipment designed to prevent falls from elevated heights; in failing to supervise the job site in a manner required of owners and contractors; in failing to provide an appropriate ladder; in failing to provide adequate safety lines and harnesses to protect work-

ers at the height where plaintiff was working at the time of the accident; in causing or allowing debris to remain as an obstruction; in failing to supervise so that personal protective equipment such as hard hats, safety belts, and life lines of sufficient vertical height were used; in failing to provide guardrails and toeboards; [and] in failing to provide a safe, stable and properly guarded scaffold.

*Id.* ¶ 21. Finally, plaintiff asserts violations of the B.O.C .A. (Building Officials & Code Administrators) National Building Code, the Occupational Safety and Health Administration Construction/Demolition Standards, the Connecticut State Building Code and Supplement, and several provisions of the Connecticut General Statutes. *Id.*

Dutchess urges this Court to find that this case is similar to *Cimino v. Yale University,* 638 F.Supp. 952 (D.Conn.1986). In *Cimino,* the plaintiff was seriously injured when he was struck by a goalpost that was pulled down by spectators after a football game at the Yale Bowl. The plaintiff brought a negligence action against Yale University, the City of New Haven, and the sixty City police officers who worked at the game. The City and the police officers filed a cross-claim against Yale for common-law indemnification, and Yale moved to dismiss the cross-claim.

In granting Yale's motion, the court concluded that the City and the police officers could not meet either the second or third prong of the *Kaplan* test. Construing the cross-claim against the background of the complaint, the court found that the plaintiff's claims against the City and the police officers were based on their statutory duties and responsibilities under C.G.S.A. §§ 7–108 and 7–284. These statutory duties and responsibilities required the City and the police officers to respond, react, prevent, stop, and suppress the spectators' conduct with respect to the goalposts. They also had the affirmative duty to protect the plaintiff and others similarly situated; as well as to provide equipment to protect against and prevent the conduct of others which resulted in the plaintiff's injury. 638 F.Supp. at 958–59. Based on these statutory duties and responsibilities,

the court found that the City and the police officers could have been found liable only if they were the *direct, immediate cause of the injury* and if they were in exclusive control of the situation at the Yale Bowl. *Id.* at 959.

Relying on *Cimino,* Dutchess argues that if South Hill and S.W. Development are found liable, such a determination would preclude any finding that Dutchess' negligence was primary or that Dutchess was in control of the construction site to the exclusion of defendants. On the issue of causation, Dutchess asserts that a finding against the defendants in the first-party action means that the defendants would have been found to have been the direct, immediate cause of the plaintiff's injuries. On the issue of control, Dutchess contends that if plaintiff prevails in the first-party action, the jury would have found that defendants exercised "at least some degree of control." Reply Mem. at 2. To the contrary, we do not find that these conclusions are the only ones which could be made if defendants are found negligent in plaintiff's first-party action.

While Dutchess is correct that plaintiff's claim against defendants is based on a theory of independent negligence, and not vicarious liability, this does not foreclose the possibility that Dutchess was also negligent as a joint tortfeasor. Generally, an "indemnitee [defendants] may be chargeable with personal negligence, independent of any negligence of the indemnitor [Dutchess], and still not be chargeable with active or primary negligence. Personal independent negligence may be passive or secondary negligence. It need not necessarily be active or primary negligence." *Kaplan,* 152 Conn. at 415, 207 A.2d at 738. For example, it would be possible for a jury to conclude that defendants were negligent for failing to exercise *any* control over the construction site. In this example, the defendants' negligence would not have been the direct, immediate cause of the plaintiff's injuries, nor would defendants have been in exclusive control of the situation. Notably, plaintiff nowhere in the

amended complaint contends that South Hill or S.W. Development were in exclusive control of the construction site, nor does he allege that defendants were primarily responsible for his injuries.[1]

Consequently, we find that because plaintiff does not limit the allegations in his complaint to defendants' primary negligence or to defendants' exclusive control of the situation, we are not compelled to find that defendants cannot meet their burden under *Kaplan.* Instead, we find that defendants' have adduced sufficient evidence to raise a genuine issue of material fact on their common-law indemnification claim as to which party was primarily negligent and which party was in exclusive control of the construction project. *See Skuzinski,* 240 Conn. at 704, 694 A.2d at 794; *Weintraub v. Richard Dahn, Inc.,* 188 Conn. 570, 573, 452 A.2d 117, 120 (1982). These material issues of fact make summary judgment inappropriate, and we therefore deny Dutchess' motion on Count One of the third-party complaint.

## II. CONTRACTUAL INDEMNIFICATION

Count Two of the third-party complaint alleges a contract-based indemnification claim. To prevail on this claim, defendants must show either an express or implied contractual right to indemnification. *Connecticut Gen. Life Ins. Co. v. SVA, Inc.,* 743 F.Supp. 107, 110 (D.Conn.1990). For a court to find an implied contractual duty, it must arise by the affirmative conduct of the parties. *In re General Dynamics Asbestos Cases,* 539 F.Supp. 1106, 1111 (D.Conn.1982).

Defendants contend that Dutchess and defendants entered into an indemnification agreement which provided that "[t]he contractor [Dutchess] hereby indemnifies and holds harmless the *owner* from any and all liability for personal injury and/or property damage resulting from any action or inaction of the contractor in performing his work under this agreement." Third-party Compl.

---

1. Dutchess asserts that plaintiff claimed that defendants were in "substantial control" of the construction site. Dutchess apparently takes this statement from plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss.

As previously mentioned, however, we construe the claim for indemnification against the amended complaint, and not against any briefs which may have been filed in connection with other motions in this case.

¶ 9. In support of its summary judgment motion, Dutchess provided copies of an unsigned work letter agreement dated July 31, 1995 regarding roofing services. Attached to this agreement is another agreement between S.W. Development and Dutchess that includes an indemnification clause. There is also an attachment to this agreement entitled "General Requirements, C—Contract Administration." This attachment also has an indemnification clause in a section entitled "Liability." Vassari Aff. Ex. A. The indemnification clause language cited by defendants in their third-party complaint is identical to the language in the latter attachment on contract administration.

Here, we are presented with two clearly-worded indemnification clauses. However, Dutchess argues that because it never signed the work letter agreement on roofing services, it is not bound by the indemnification clauses. Dutchess further contends that the plaintiff's injuries would not be covered under the indemnification clauses in the roofing services agreement because when the plaintiff was injured, he was installing siding and was not doing any work on the roof.

In response, defendants assert that an implied contract arose between the parties, whereby Dutchess agreed to perform siding installation, roofing, carpentry, and framing services. It also claims that the work letter agreements created the terms of the implied contract. In an affidavit, William Vassari, Dutchess' president, confirms that Dutchess performed "a variety of tasks at the construction site, including siding installation, roofing, framing and carpentry." Vassari Aff. of 6/22/98 ¶ 6. Vassari testified that Louis Rosenblatt, construction manager of the Southwoods project, hand-delivered the roofing services agreement to him. Vassari then testified that while he did not sign the agreement, he never informed Rosenblatt that he would not provide services to S.W. Development under the terms of the agreement. Vassari Dep. of 1/12/98, at 103. Moreover, an invoice was produced by which Dutchess sought payment for siding installation, performed at the building upon which the plaintiff was working when he was injured, which was performed on or before September 9, 1995. There was also testimony about Dutchess' performance of services

under the terms of a separate contract for framing and carpentry services, which post-dated the plaintiff's accident, even though Dutchess never signed that contract. *Id.* at 109; *see* Vassari Aff. of 6/22/98, Ex. C.

Construing the facts in a light most favorable to defendants, defendants have provided sufficient facts to demonstrate the existence of a genuine issue of material fact as to whether the parties' conduct gave rise to an implied contract for indemnification. Also, a determination of whether an implied contract exists will depend on the parties' intent, which typically makes summary judgment inappropriate.

■ Nevertheless, Dutchess contends that even if it implicitly agreed to indemnify S.W. Development, the language of the indemnification clauses would not cover the factual situation in this case. Dutchess asserts that the indemnification clauses are triggered only if defendants were found liable for Dutchess' negligence. Yet, Dutchess argues that if plaintiff prevails in his first-party action, the jury would have found defendants independently negligent. Accordingly, "[a]ny liability that the defendants may incur from the plaintiff's claims will result from the defendants' own negligence, and not any action or inaction of Dutchess." Dutchess' Mem. of Law in Supp. of Mot. for Summ. J. at 15. Thus, Dutchess claims that the indemnification clauses do not apply here because they do not require Dutchess to indemnify defendants for defendants' own negligence.

We agree. The indemnification clauses, if they are found to exist here, are not so broadly-worded that they would require Dutchess to indemnify defendants for liability for personal injury or property damage which resulted from *any* cause, including defendants' own negligence. *Cf. Laudano v. General Motors Corp.*, 34 Conn.Supp. 684, 388 A.2d 842 (App.1977) (holding that a broad indemnification clause permitted a buyer to recover from the seller/employer for the buyer's own negligence). Rather, the indemnification clauses provide that Dutchess is required to indemnify defendants' for any liability for personal injury or property damage resulting only from Dutchess' action or inaction. Thus, before defendants can enforce the indemnification clauses, defen-

dants must have been responsible to plaintiff for liability resulting from Dutchess' negligence. *See J'Anthony v. City of Waterbury,* Civ. No. 0118960, 1996 WL 218731, at *2 (Conn.Super. Apr.4, 1996). In this case if defendants are liable to plaintiff, it will be for their own independent negligence and not for any negligence attributable to Dutchess. *See O'Rourke v. Trusthouse Forte Food Servs., Inc.,* Civ. No. 91–0118880, 1995 WL 17175, at *2 (Conn.Super. Jan.11, 1995); *Echevarria v. Trinity College,* Civ. No. 91–0396065, 1994 WL 43575, at *2–3 (Conn.Super. Feb. 3, 1994).

Defendants contend, however, that Dutchess "assumes that the indemnity claim is determined by the first party judgment between Fifield and (defendants)." Defs.' Mem. at 12. They note that Dutchess "could not be a defendant in the first party action of Fifield because of the workers' compensation exclusive remedy rule ..." *Id.* They then argue that the "question of whether [defendants] was [sic] solely negligent and therefore not entitled to indemnification will be decided in the third party action, not the first party action." *Id.* at 14.

Defendants correctly note that it would be possible for a jury to find the defendants liable to the plaintiff in the first-party action based upon the defendants' passive negligence. This finding of passive liability, however, would have resulted from defendants' own action or inaction. Therefore, the indemnification clauses do not apply because the issue is not the relative degrees of negligent conduct as between defendants and Dutchess; rather, it is whether the defendants will have been liable to the plaintiff due to Dutchess' negligence. Therefore, we grant Dutchess' motion for summary judgment on Count Two of the third-party complaint.

## CONCLUSION

For the foregoing reasons, Dutchess' summary judgment motion (Doc. # 34) is DENIED in part and GRANTED in part.

**SO ORDERED.**